UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau<br>and<br>United States of America,<br>         Plaintiffs,<br><br>v.<br><br><br>Trident Mortgage Company LP,<br>         Defendant. | Case No. _____<br><br><br>**CONSENT ORDER** |

## INTRODUCTION

Plaintiffs, the Consumer Financial Protection Bureau (Bureau) and the United States of America (United States), commenced this civil action to obtain injunctive and monetary relief and civil penalties from Trident Mortgage Company LP (Trident). The Complaint alleges violations of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5536(a)(1)(A), in connection with Trident's mortgage lending in the Philadelphia-Camden-Wilmington, PA-NJ-DE-MD Metropolitan Statistical Area (Philadelphia MSA). Plaintiffs allege that Trident unlawfully discriminated by redlining Majority-Minority Neighborhoods, as defined below, in its residential mortgage lending.

The Bureau, the United States, and Trident (together, "the Parties") agree to entry of this Consent Order (Order), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

Trident Mortgage Company LP has represented that it has discontinued mortgage origination operations. Trident is a subsidiary of HomeServices of America, Inc. (HSOA).

1

## FINDINGS

1. This Court has jurisdiction over the parties and the subject-matter of this action.

2. Trident neither admits nor denies the allegations in the Complaint, except as specified in this Order. For purposes of this Order, Trident admits the facts necessary to establish the Court's jurisdiction over Trident and the subject matter jurisdiction related to the Lawsuit Subject Matter.

3. Trident waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4. Entry of this Order is in the public interest.

## DEFINITIONS

5. The following definitions apply to this Order:

   a. "Covered Staff and Officials" means members of Trident's Compliance Committee and managers, employees, or agents of the Lender, HSOA, or Trident; who have responsibilities related to the Lawsuit Subject Matter.

   b. "Effective Date" means the date on which the Court enters this Order.

   c. "HomeServices of America" or "HSOA" means HomeServices of America, Inc., a parent company of Trident, as well as any of HomeServices of America's successors and assigns.

   d. "Lawsuit Subject Matter" means allegations that Trident violated the FHA, ECOA, and/or the CFPA in connection with Trident's mortgage lending in the Philadelphia MSA through unlawful discrimination by redlining Majority-

2

Minority Neighborhoods in its residential mortgage lending.

e. "Lender" is the entity Trident contracts with to administer and make loans under the Loan Subsidy Fund and carry out other Conduct Provisions as required under this Order. Trident will not serve as the Lender under this Order.

f. "Majority-Minority Neighborhood," or "Majority-Minority Census Tract" means a census tract in which more than 50% of the residents are identified in the U.S. Census as in a group other than white Non-Hispanic, including Black, Hispanic, Asian, Native American, Native Hawaiian, or Pacific Islander.

g. "Compliance Committee" is a committee established by Trident that will ensure compliance with the terms of this Order.

h. "Philadelphia MSA" means the Philadelphia-Camden-Wilmington, PA-NJ-DE-MD Metropolitan Statistical Area.

i. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Trident based on the Lawsuit Subject Matter.

j. "Trident" means Trident Mortgage Company LP, a subsidiary of HomeServices of America, Inc., as well as any of Trident's successors and assigns.

## CONDUCT PROVISIONS

### I

### Nondiscrimination Injunction

6. Trident, its officers, agents, servants, and employees, are permanently restrained

3

from engaging in any act or practice that constitutes redlining in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619, the Equal Credit Opportunity Act, 15 U.S.C. § 1691-1691f or Regulation B, 12 C.F.R. part 1002. Nothing else in this Order will be read as an exception to this Paragraph.

## II

## Loan Subsidy Program

7.      Within 10 days of the Effective Date, Trident must reserve or deposit into a segregated deposit account Eighteen Million Four Hundred Thousand dollars ($18,400,000) for the purpose of funding a Loan Subsidy Program to increase the credit extended in Majority-Minority Neighborhoods in the Philadelphia MSA to remedy Trident's alleged redlining in violation of the FHA and ECOA (Loan Subsidy Program). The investment under the Loan Subsidy Program will consist only of the cost of providing the subsidies to consumers described in Paragraph 9 and not the cost of implementing the Loan Subsidy Program.

      a.   Trident has ceased accepting new inquiries or loan applications for mortgage loans. Accordingly, Trident will comply with the requirement to make loans under the Loan Subsidy Program by contracting with a Lender to administer and make loans under the Loan Subsidy Program. Within 14 days of the Effective Date, Trident will identify the Lender, subject to the non-objection of Plaintiffs. Within 30 days of the Effective Date, Trident will enter into a contract between the Lender and Trident (the Lender Contract), which will be subject to the non-objection of Plaintiffs. The Lender Contract will require the Lender to comply with the provisions of this Order including the Remedial Plan required under Section IX and must require it to work cooperatively with

Trident and the Plaintiffs in the conduct of such activities. The Lender must be licensed to originate residential mortgage loans in all Majority-Minority Census Tracts in the Philadelphia MSA, and Trident must include a copy of the signed Lender Contract in the Remedial Plan.

b. The Loan Subsidy Program must offer residents or prospective residents in Majority-Minority Neighborhoods in the Philadelphia MSA home mortgage loans on a more affordable basis than otherwise available from the Lender. Loans originated under this program must not exceed the conforming loan limit established by the Federal Housing Finance Agency.

8. The Lender will subsidize home mortgage loans made to "qualified applicants" with funds from the Loan Subsidy Fund. A "qualified applicant" is any applicant who (i) applies for a mortgage for a residential property located in a Majority-Minority Census Tract in the Philadelphia MSA that will serve as the applicant's primary residence, or (ii) is qualified to participate in a Special Purpose Credit Program consistent with the goals of this Section and subject to the non-objection of the Plaintiffs. A qualified applicant must in all cases be qualified for a residential mortgage loan under the underwriting standards of the Lender.

9. Loan subsidies under the Loan Subsidy Program must be provided throughout the term of the Order, so long as funds remain in the Loan Subsidy Fund, through any of the following means, or a combination thereof:

a. originating a loan for a home purchase, refinancing, or home improvement at an interest rate below the otherwise prevailing market interest rate offered by the Lender;

b. down payment assistance in the form of a direct grant;

5

    c.   closing cost assistance in the form of a direct grant;

    d.   payment of the initial mortgage insurance premium on loans subject to such mortgage insurance; or

    e.   other appropriate assistance measures approved by the Plaintiffs in writing.

10. The Lender will retain the discretion to offer more than one, or all, of the forms of assistance in Paragraph 9 to qualified applicants on an individual basis as it deems appropriate subject to regulatory requirements. The Lender must exercise this discretion in a manner that is consistent with originating loans to qualified applicants with due reliance upon applicable underwriting guidelines, and will have discretion to provide the loan subsidy among its loan products. The combined forms of subsidies set forth in Paragraph 9 cannot exceed Ten Thousand dollars ($10,000) per qualified applicant unless Trident receives non-objection from Plaintiffs to increase that amount.

11. No provision of this Order, including the Loan Subsidy Program, requires the Lender to make a loan to a person who is not qualified for the loan based upon lawful, nondiscriminatory terms; however, the Lender may choose to apply more flexible underwriting standards in connection with the Loan Subsidy Program. The underwriting standards applied to residents of Majority-Minority Neighborhoods will be no less favorable than the underwriting standards applied to residents in other tracts.

12. Though the Lender has obligations under the Lender Contract and this Order, Trident is responsible for ensuring that the requirements of this Order, including each of the provisions within Paragraphs 7-12, are met.

### III

### Credit Needs Assessment and Report

13.    Within 45 days of the Effective Date, Trident must secure and retain one or more independent third-party credit-needs-assessment consultants (CNA Consultant), with specialized experience in ensuring nondiscriminatory access to credit, subject to the non-objection of the Plaintiffs, to begin an assessment of the credit needs of Majority-Minority Neighborhoods within the Philadelphia MSA. If the Plaintiffs object to one or more CNA Consultants Trident selects, Trident must identify new CNA Consultants to the Plaintiffs within 45 days. This credit needs assessment must include:

    a.  an analysis of the most recent available demographic and socioeconomic data describing the Majority-Majority Neighborhoods;

    b.  an evaluation (to include market research and interviews) of the credit needs of, and corresponding lending opportunities in, these Neighborhoods, including, but not limited to, the need for and feasibility of alternative mortgage and other credit products;

    c.  marketing meetings with real estate professionals to discuss product offerings, competition, and the viability of obtaining more applications from Majority-Minority Neighborhoods;

    d.  consideration of how the Lender's lending operations can be expanded to serve the remedial goals of this Order;

    e.  a review of the availability and feasibility of relevant federal, state, and local governmental programs that are available to residents seeking and obtaining residential mortgage loans; and an evaluation of how participation in each of

them would assist in achieving the remedial goals of this Order;

f.  meetings with representatives of community organizations involved in promoting fair lending, home ownership, or residential development in affected Majority-Minority Neighborhoods; and

g.  recommendations that address how each requirement of the Order as set forth in Paragraphs 7-12 and 15-31 should be carried out to best achieve the remedial goals of this settlement.

14.  Within 90 days of being retained, the CNA Consultant must prepare a written report detailing the findings of the review (CNA Report) and provide the CNA Report to the Compliance Committee and to Plaintiffs.

## IV

## Training

15.  Trident will ensure that all Covered Staff and Officials receive bi-annual training. The training will include topics on implicit racial bias, conduct that could constitute redlining, and how to detect, prevent, and remedy redlining, as well as training on Trident's and the Lender's obligations under ECOA, Regulation B, the FHA, and this Order. Trident will implement a system for each person referenced in this Paragraph to acknowledge that they completed the fair lending training. All training attendees will be required to demonstrate proficiency. Trident will bear all costs associated with the trainings. The training will be conducted by an independent, qualified third-party trainer selected by Trident and subject to non-objection by the Plaintiffs.

16.  Within 60 days of the Effective Date, Trident will submit the qualifications of the third-party trainer described in Paragraph 15 to the Plaintiffs for non-objection. Within 45 days

of receiving non-objections from the Plaintiffs regarding the independent, qualified third-party trainer, Trident will submit the proposed training curriculum to the Plaintiffs for non-objection. Within 30 days of receiving non-objections from the Plaintiffs regarding the proposed training curriculum, Trident will commence delivery of the training described in this Section with training to conclude within 90 days of receiving non-objections. Trident will provide a report that includes these acknowledgements to the Plaintiffs 45 days after it has completed the training. Any proposed changes to the third-party trainer or the training curriculum are subject to non-objection by the Plaintiffs.

## V

### Advertising and Outreach

17.     Within 10 days of the Effective Date, Trident must reserve or deposit into a segregated deposit account Eight Hundred Seventy-Five Thousand dollars ($875,000) to be spent on the targeted advertising and outreach campaign described in Paragraphs 18-20.

18.     The Lender Contract will require the Lender to undertake such advertising and outreach efforts, and will require the Lender's name to appear in advertising materials and outreach programs. The advertising and outreach campaign will be informed by the findings and recommendations of the credit needs assessment required in Paragraphs 13-14, will advertise the Lender's residential loan products, including products for which the Loan Subsidy Program will be applied, and will seek to generate applications from qualified applicants for mortgage loans secured by properties in Majority-Minority Neighborhoods in the Philadelphia MSA. Specific details regarding the distribution channels to be used for advertising and outreach will be set forth in the Remedial Plan described in Paragraph 32.

19.     The Lender Contract will require the Lender to include on all of its print

advertising and promotional materials referencing residential mortgage loans an equal housing opportunity logo, slogan, or statement. All radio or television advertisements will include an audible statement that the Lender is an "Equal Opportunity Lender" or "Equal Housing Lender."

20.     In addition to the targeted advertising efforts described in Paragraphs 17-20, the Lender Contract will require the Lender to conduct quarterly outreach programs in the Philadelphia MSA for real estate professionals and entities engaged in residential real estate-related business in Majority-Minority Neighborhoods in the Philadelphia MSA to inform them of the products and services that the Lender offers, including the Loan Subsidy Program in this Order, and to otherwise develop business relationships with them. These programs will be offered at locations reasonably convenient to the business operations of the attendees.

## VI

### Consumer Financial Education

21.     Within 10 days of the Effective Date, Trident must reserve or deposit into a segregated deposit account Three Hundred Seventy-Five Thousand dollars ($375,000) for the purpose of funding a consumer financial education program designed to provide information, training, and counseling services about consumer finance to individuals in Majority-Minority Census Tracts in the Philadelphia MSA that will help identify and support qualified loan applicants and will consider the results of the credit needs assessment required in Paragraphs 13-14 in so doing.

22.     The Remedial Plan described in Paragraph 32 must specify that Trident will sponsor at least eight financial education events per year offered by community and governmental organizations engaged in fair lending work, or through the Lender's financial education programs. Salaries or other compensation for participating personnel of Trident or any

of its affiliates, including HSOA or the Lender, will not count towards the amount spent on these programs. The financial education events may be conducted as in-person events offered at a location reasonably convenient to the attendees, including as virtual events.

23.     These events will cover consumer finance and related matters to help identify qualified loan applicants from Majority-Minority Neighborhoods in the Philadelphia MSA.

24.     These financial education events will be marketed toward residents of Majority-Minority Neighborhoods in the Philadelphia MSA and held at locations intended to be convenient to those residents.

**VII**

**Physical Locations and Personnel to Serve Majority-Minority Neighborhoods**

25.     Subject to any applicable approval of the appropriate regulator or licensing agency, the Lender Contract will require the Lender to maintain and/or open licensed branch locations so that at least 4 such offices are located within Majority-Minority Neighborhoods in the Philadelphia MSA within 18 months of the Effective Date. The Lender Contract will also require that a minimum of 4 such those offices remain in operation during the term of this Order. These offices will be in visible and accessible locations in the Majority-Minority Neighborhoods in the Philadelphia MSA.

26.     All lending offices that the Lender operates within Majority-Minority Neighborhoods in the Philadelphia MSA will provide services generally commensurate with those services previously offered at Trident's full-service offices, as well as any additional products or services the Lender may choose to offer as a result of the credit needs assessment.

27.     Nothing in this Order precludes the Lender from opening or acquiring additional licensed branch lending offices.

11

28.     The Lender Contract will require the Lender to employ a full-time Manager of Community Lending. For the duration of this Order, Trident and the Manager of Community Lending will oversee the continued development of lending in Majority-Minority Neighborhoods within the Philadelphia MSA consistent with the action steps contained in the Remedial Plan; coordinate the community lending initiatives and outreach programs required under this Order; serve as a resource to the Lender's staff to encourage and develop more lending within Majority-Minority Neighborhoods within the Philadelphia MSA; promote financial education and counseling within the Philadelphia MSA; and build relationships with community groups within the Philadelphia MSA.

29.     The Lender Contract will require that, within 180 days of the Effective Date, not less than 4 mortgage loan officers total are assigned to solicit applications primarily from Majority-Minority Neighborhoods within the Philadelphia MSA. The Lender Contract will require that such loan officers are assigned to cover all Majority-Minority Census Tracts within the Philadelphia MSA, and that these loan officers have the opportunity to earn similar compensation to other loan officers for the work that they will perform in the Majority-Minority Neighborhoods. These mortgage loan officers shall not be precluded from also originating loans for applicants outside of the Philadelphia MSA.

## VIII

### Community Development Partnership Program

30.     Within 10 days of the Effective Date, Trident must reserve or deposit into a segregated deposit account Seven Hundred Fifty Thousand dollars ($750,000) to be spent on the partnerships described in this Paragraph. The Lender Contract will require the Lender to partner with one or more community-based organizations or governmental organizations that provide

(1) home repair or other grants designed to assist homeowners who experience financial distress or deferred maintenance on their properties, or (2) financial, homeownership, or foreclosure prevention services, in either case to the residents of Majority-Minority Neighborhoods in the Philadelphia MSA. The Lender will develop such partnerships in a manner consistent with achieving the remedial goals of this Order; specifically, the Lender will form partnerships with organizations that will aid it in establishing a physical presence in Majority-Minority Neighborhoods in the Philadelphia MSA; marketing its residential loan products in Majority-Minority Neighborhoods in the Philadelphia MSA; extending credit to qualified borrowers in Majority-Minority Neighborhoods in the Philadelphia MSA; and assisting with the revitalization and stabilization of the housing market in Majority-Minority Neighborhoods in the Philadelphia MSA.

31. During the life of the Loan Subsidy Program, the Lender will annually evaluate its partnership(s), to identify any required changes to the program to better meet the residential credit needs of Majority-Minority Neighborhoods in the Philadelphia MSA.

## IX

### Remedial Plan

32. Within 180 days of the Effective Date, Trident must develop and submit to the Plaintiffs a comprehensive compliance plan designed to ensure compliance with this Order and for implementing the Loan Subsidy Program that must, at a minimum:

    a. include detailed steps for addressing each action required by this Order;

    b. describe in detail how the requirements of Section II will be implemented, including proposing a methodology to calculate the total cost to Trident of the Loan Subsidy Program;

c.  propose in writing how best to achieve the goals of the Order in light of the CNA Report;

d.  describe in detail how the requirements of Section IV will be implemented;

e.  describe in detail how the requirements of Section V will be implemented;

f.  describe in detail how the requirements of Section VI will be implemented;

g.  describe in detail how the requirements of Section VII will be implemented, including identifying the specific sites that will serve Majority-Minority Neighborhoods;

h.  describe in detail how the requirements of Section VIII will be implemented, including a review of partner organizations initially identified; a summary of any meetings with these organizations; an examination of any relevant federal, state, or local governmental programs that may assist in serving the affected areas; the basis for the selection of the proposed partner(s); and a detailed description of how the partnership(s) will be implemented over the term of the Order;

i.  include specific timeframes and deadlines for implementation of the steps described above; and

j.  include the signatures of the Lender and any other entities responsible for implementing the requirements of this Order.

33.  Plaintiffs will have the discretion to make a determination of non-objection to the Remedial Plan or to direct Trident to revise it. If the Plaintiffs direct Trident to revise the Remedial Plan, the Compliance Committee must make the requested revisions and resubmit the Remedial Plan to Plaintiffs within 30 days.

14

34. After receiving notification that the Plaintiffs have made a determination of non-objection to the Remedial Plan, Trident must implement and adhere to the steps, recommendations, deadlines, and timeframes that will be specified in the Remedial Plan.

## X

### Role of the Compliance Committee

35. The Compliance Committee must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Plaintiffs.

36. Although this Order requires Trident to submit certain documents for review or non-objection by Plaintiffs, Trident is responsible for its own proper and sound management, and for ensuring that it complies with this Order and the laws that the Plaintiffs enforce, including Federal consumer financial laws.

37. In each instance that this Order requires the Compliance Committee to ensure adherence to, or perform certain obligations of Trident, the Compliance Committee must:

   a. authorize whatever actions are necessary for Trident to fully comply with the Order;

   b. require timely reporting by management to the Compliance Committee on the status of compliance obligations; and

   c. require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Compliance Committee directives related to this Section.

**MONETARY PROVISIONS**

**XI**

**Order to Pay Civil Money Penalty**

38.    Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Trident must pay a civil money penalty of Four Million dollars ($4,000,000) to the Bureau.

39.    Within 10 days of the Effective Date, Trident must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

40.    The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

41.    Trident must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Trident may not:

   a.   claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b.   seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

16

## XII

### Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

42.     In the event of any default on Trident's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

43.     Trident relinquishes all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Trident.

44.     Under 31 U.S.C. § 7701, Trident, unless it already has done so, must furnish to the Plaintiffs its taxpayer-identification number, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

45.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Trident must notify the Plaintiffs of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Trident paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Trident may not argue that Trident is entitled to, nor may Trident benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Trident based on the civil money penalty paid in this action or based on any payment that the Bureau

17

makes from the Civil Penalty Fund, Trident must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## XIII

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

46.     Trident must notify Plaintiffs of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Trident; or a change in Trident's name or address. Trident must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

47.     Within 7 days of the Effective Date, Trident must:

    a.  designate at least one direct telephone number and email, physical, and postal addresses as points of contact that the Plaintiffs may use to communicate with Trident;

    b.  identify all businesses for which Trident is the majority owner, or that Trident directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

    c.  describe the activities of each such business, including the products and

services offered, and the means of advertising, marketing, and sales.

48.     Trident must report any change in the information required to be submitted under Paragraph 46 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

49.     Within 120 days of receiving notice of non-objection to the Remedial Plan, and then every year after receiving notice of non-objection to the Remedial Plan, Trident must submit to the Bureau and the United States an accurate written compliance progress report sworn to under penalty of perjury (Compliance Report) that has been approved by the Compliance Committee, which, at a minimum:

a.  lists each applicable Paragraph and subparagraph of the Order and describes in detail the manner and form in which Trident has complied with each such Paragraph and subparagraph of this Order;

b.  describes in detail the manner and form in which Trident has complied with the Remedial Plan; and

c.  attaches a copy of each Order Acknowledgment obtained under Section XIV, unless previously submitted to the Plaintiffs.

## XIV

### Order Distribution and Acknowledgment

50.     Within 7 days of the Effective Date, Trident must submit to the Plaintiffs an acknowledgment of receipt of this Order, sworn under penalty of perjury.

51.     Within 30 days of the Effective Date, Trident must deliver a copy of this Order to all Covered Staff and Officials.

52.     Trident must deliver a copy of this Order to any business entity resulting from any

19

change in structure referred to in Section XIII including to the Lender, any future Compliance Committee members and executive officers, as well as to any managers, employees, or other agents who will have responsibilities related to the subject matter of the Order, including all Covered Staff and Officials, before they assume their responsibilities.

53.     Trident must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001-7006, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

54.     Within 90 days of the Effective Date, Trident must provide the Plaintiffs with a list of all persons and their titles to whom this Order was delivered through that date under Paragraphs 51 and 52 and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 53.

## XV

## Recordkeeping

**IT IS FURTHER ORDERED** that

55.     Trident must create, for at least 2 years after full compliance with this Order as described in Section XVII below, the following business records:

      a.  all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Plaintiffs; and

      b.  the following documents pertaining to the Loan Subsidy Program: the amounts loaned, amount of subsidy, type of subsidy, Universal Loan Identifier, type of loan, loan purpose, the property address of the collateral, and applicant race and ethnicity.

20

56.     Trident must retain these documents for at least 2 years after full compliance of this Order as described in Section XVIII below and make them available to Plaintiffs upon Plaintiffs' request.

57.     Trident must maintain, for at least 2 years after full compliance with this Order as described in Section XVIII below:

a.  copies of all training materials; advertisements; websites; and other marketing materials required under Section V, including any such materials used by a third party on Trident's behalf or on behalf of the Lender;

b.  for each individual borrower who received a loan under the Loan Subsidy Program: the consumer's name, address, phone number, email address, a description of the loan received including describing the loan terms and the subsidies provided under the Loan Subsidy Program, and the date on which the loan closed;

c.  all consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests relating to the offering or provision of loans under the Loan Subsidy Program;

d.  records showing, for each Covered Staff and Official providing services related to the Loan Subsidy Program, that person's: name; telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for departure or termination; and

e.  records showing, for each service provider providing material services related to the administration of the Loan Subsidy Program, the name of a point of

contact, and that person's telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination.

Trident must make these materials available to Plaintiffs upon the Plaintiffs' request.

## XVI

## Notices

**IT IS FURTHER ORDERED** that:

58.     Unless otherwise directed by the Bureau, all material required by this Order will be sent to the Bureau with the subject line, "CFPB and United States of America v. Trident Mortgage Company LP, Case No. [Docket #]," by overnight delivery service or first-class mail to the below addresses and contemporaneously by email to:

Enforcement_Compliance@cfpb.gov

and

Regional Director
Northeast Region
Consumer Financial Protection Bureau
140 E. 45th Street
4th Floor
New York, NY 10017

59.     All material required by this Order will be sent to the United States by email to the Department of Justice attorney(s) assigned to this matter, and by commercial overnight delivery service addressed as follows:

Chief, Housing and Civil Enforcement Section
Civil Rights Division, U.S. Department of Justice
150 M Street NE, 8th Floor
Washington, DC 20002
Attn: DJ# 175-41-230

## XVII

### Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Trident's compliance with this Order:

60. Within 30 days of receipt of a written request from Plaintiffs, Trident must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

61. Trident must permit Plaintiffs' representatives to interview any employee or other person affiliated with Trident who has agreed to such an interview regarding: (a) the Lawsuit Subject Matter; or (b) compliance with this Order. The person interviewed may have counsel present.

62. Nothing in this Order will limit the Plaintiffs' lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XVIII

### Administration

63. Trident's obligations under Section I of this Order will remain in effect permanently. Unless a different duration is specified above, the other requirements of this Order will be in effect until the later of:

    a. 90 days after the submission of a report by Trident to the Plaintiffs that demonstrates the fulfillment of all obligations to invest all money required by this Order; or

    b. 5 years from the Effective Date.

64. Should Trident seek to transfer or assign all or part of the operations that are subject to this Order, Trident must, as a condition of the transfer or assignment, obtain the

23

written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

65.     Should HSOA or the Lender seek to transfer or assign all or part of the operations that are subject to this Order, HSOA or the Lender, as applicable, must, as a condition of the transfer or assignment, obtain the written agreement of the transferee or assignee to comply with Sections II through VII of this Order.

66.     By its signature HSOA fully and unconditionally guarantees the performance of Trident's obligations under this Order, including, but not limited to all monetary obligations and matters relating to compliance with or enforcement of this Order, and will perform those obligations if Trident fails to satisfy them. HSOA submits to the jurisdiction of this Court for any matters relating to compliance with or enforcement of this Order. Trident and HSOA agree that the Bureau and the United States reserve the right to amend the Complaint to add HSOA as a required party under Rule 19 of the Federal Rules of Civil Procedure; provided that, before filing any motion under Rule 19, Plaintiffs must first notify Trident and HSOA and attempt to discuss the substance of the contemplated motion and any potential resolution. Trident and HSOA do not waive the right to present to the Court evidence related to whether Trident has satisfied its obligations under this Order.

67.     Any time limits for performance may be extended by mutual written agreement of the parties. Other modifications may be made only upon approval of the Court, by motion of any party.

68.     The parties agree that litigation is not reasonably foreseeable. If any party implemented a litigation hold to preserve information, the party is no longer required to maintain it. Nothing in this Paragraph relieves either party of any other obligations imposed by the Order.

69.     The Plaintiffs release and discharge Defendants from any and all potential liability for claims arising out of the Lawsuit Subject Matter before the Effective Date. This release does not preclude or affect any right of the Plaintiffs to determine and ensure compliance with the Order, or to seek penalties for any violations of the Order.

## XIX

### Retention of Jurisdiction

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction of this matter for the purpose of enforcing this Order.


SO ORDERED, this ___ day of         , 2022.


_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby apply for and consent to the entry of this Consent Order:

Dated: July 26, 2022                                    Respectfully submitted,

FOR THE CONSUMER FINANCIAL PROTECTION BUREAU:

ERIC HALPERIN
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

*/s/   Rebeccah Golubock Watson*
REBECCAH GOLUBOCK WATSON
CHELSEA PETER
*Enforcement Attorneys*
Consumer Finance Protection Bureau
1700 G Street NW
Washington, DC 20552
Telephone: (202) 435-7895
Rebeccah.Watson@cfpb.gov
Chelsea.Peter@cfpb.gov

FOR THE UNITED STATES:

/s/ Jacqueline C. Romero
JACQUELINE C. ROMERO
United States Attorney
Eastern District of Pennsylvania


GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division




GERALD B. SULLIVAN
Assistant United States Attorney
615 Chester Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8786
Fax: (215) 861-8618
Gerald.Sullivan@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division


SAMEENA SHINA MAJEED
Chief


LUCY G. CARLSON
Deputy Chief


/s/ Sara L. Niles
SARA L. NILES
/s/ Abigail A. Nurse
ABIGAIL A. NURSE
/s/ Jennifer A. Slagle Peck
JENNIFER A. SLAGLE PECK
Trial Attorneys
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
Sara.Niles@usdoj.gov
Abigail.Nurse@usdoj.gov
Jennifer.Slagle.Peck@usdoj.gov

FOR TRIDENT MORTGAGE COMPANY LP:


*/s/ Jonice Gray Tucker*
JONICE GRAY TUCKER
Partner
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1781
jonicegraytucker@paulhastings.com

KARI K. HALL
Partner
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1782
karihall@paulhastings.com

FOR HOMESERVICES OF AMERICA, INC.:


*/s/ Jonice Gray Tucker*
JONICE GRAY TUCKER
Partner
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1781
jonicegraytucker@paulhastings.com

KARI K. HALL
Partner
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1782
karihall@paulhastings.com